UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CARL MEALING,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF RIDGEFIELD, WASHINGTON; RIDGEFIELD POLICE DEPARTMENT; RIDGEFIELD POLICE CHIEF BRUCE HALL; BRUCE HALL in his individual capacity; RIDGEFIELD CITY MANAGER GEORGE FOX, and GEORGE FOX in his individual capacity,<br><br>　　　　　Defendants. | Case No. C05-5778FDB<br><br>ORDER GRANTING MOTION OF CITY OF RIDGEFIELD AND RIDGEFIELD POLICE DEPARTMENT FOR SUMMARY JUDGMENT |

**INTRODUCTION**

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 and 1988 for employment discrimination on the basis of race, and asserts several state claims pursuant to the Court's supplemental jurisdiction. The following is a general summary of how this cause of action arose.

Pursuant to a recommendation from then Forks Chief of Police Bruce Hall, City Manager George Fox approved a four-month appointment of Carl Mealing as a police officer. Mealing was subsequently hired to a full-time, non-temporary position effective October 1, 2004.

Complaints later began to surface concerning Officer Mealing's on-duty conduct toward women, for example, from a female LaCenter reserve officer and female citizens in the LaCenter area. In spring 2005, the Clark County Sheriff's Department began investigating similar complaints. In early August 2005, City Manager George Fox informed Chief Hall that he had received verbal complaints from three Ridgefield citizens about Mealing following and harassing women. Mr. Fox

ORDER - 1

suggested that Chief Hall terminate Officer Mealing while his one-year probationary period pursuant to the Ridgefield Civil Service was still in effect.  Chief Hall instead advised Mr. Fox that he was referring the LaCenter complaints against Mealing to the Battleground Police Department, and did so on September 6, 2005.  On September 28, 2005, following the Union's notification that it was supporting Mealing's conclusion that he "does not believe extending the probationary period is in the best interest," and noting further that while certain work habits can be solved by additional training or experience, "[t]ypically, deficiencies in judgment or temperament are not amendable to correction by extension of probation" (Ex. A-15 to City's Motion.), the Battleground investigation was terminated before it was completed.  On that same day, September 28, 2005, during lunch at a Tumwater restaurant, Chief Hall notified Officer Mealing that his City employment was ended.  (Ex. D, p. 237, to City's Motion.), and a formal termination memorandum dated September 28, 2005 from Hall to Mealing followed.  (Ex. G. To City's Motion.)

On October 7, 2005, Mealing appealed his termination to the Civil Service Commission arguing that he had been employed by the City for more than one year, that he should not be considered a probationary employee, and that he could, therefore, be terminated only for cause. Sometime between October 11 and November 8, 2005, Mealing added a claim that he was illegally terminated based on racial discrimination.  (Ex. A-16, A-17, and A-23, to City's Motion.)   The Civil Service Commission undertook an investigation into Mealing's claims, and on November 8, 2005, a hearing date was set.  Mealing then withdrew his race discrimination complaint from the Civil Service Commission.  The Commission then put Mealing on paid administrative leave with full benefits retroactive from the date of his termination pending determination of his employment status. (Ex. A-23, A-24.)  On December 1, 2005, Mealing filed this lawsuit.  Also, in December the Commission offered to allow Mealing to return to work at the Ridgefiled Police Department, but Officer Mealing refused, citing unchanged circumstances (two others with whom Mealing would have to work would still be employed).  (Ex. I and J, to City's Motion.)  On February 23, 2006 at

ORDER - 2

the hearing before the Commission, Mealing withdrew his appeal on whether he was a probationary or permanent employee, and his receipt of salary and benefits stopped.

The City of Ridgefield and the Ridgefield Police Department (hereafter the "City") move for summary judgment on Plaintiff's federal claim arguing that Mealing will not be able to establish that the City of Ridgefield had a policy or custom of race discrimination or endorsed any alleged discriminatory action. The City also moves to dismiss the state claims arguing that Mealing did not comply with the notice of claim statute as required by state law for claims against a government entity.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**DISCUSSION**

To hold a local government liable under § 1983, a plaintiff must show that the constitutional deprivation at issue – here an Equal Protection claim based on race discrimination – was caused by official policy or longstanding custom. *Monell v. Department of Social Services*, 436 U.S. 658, 691,

ORDER - 3

694 (1978).  Liability will not attach based on respondeat superior or agency theory; rather, a plaintiff must show that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself constituted an act of official government policy.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).  "Cases make clear that the unconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under section 1983 .... 'If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability.'" *Gillette v. Delmore,* 979 F.2d 1342, 1348 (9th Cir. 1992).

Here, the City argues that it has long-standing written policies and laws prohibiting race discrimination.  To show liability, the City argues that Mealing must show that City Manager George Fox's alleged discriminatory animus in violation of these written policies not only resulted in the termination of Mealing, but that this one action actually changed and created a new policy contrary to the City's long-standing written policies against discrimination.  Because the Civil Service Commission, not the City Manager or the Police Chief, is the final policy maker for the City with respect to full-time police officers (see RCW 35A.13), the City argues that as a matter of law, the equal protection claim against the City fails.  Moreover, the City argues, it did not authorize any authority to the contrary, and that any policy making authority delegated to the City Manager or the Chief of Police was limited to operating within existing laws and the City's anti-discrimination policies.

Furthermore, the City argues that its Civil Service Commission did not ratify the actions of George Fox or Bruce Hall, but took steps to investigate and prevent any discriminatory actions.  The City and the Civil Service Commission placed Mealing or fully paid administrative leave; it offered reinstatement, which was refused; then Mealing withdrew his race discrimination claim once the Commission agreed to investigate it, then Mealing withdrew the remainder of his claim before the City could take any action regarding the termination.

ORDER - 4

Plaintiff Mealing argues that the city council delegated the ultimate responsibility for personnel decision to City Manager George Fox, thus vesting in him the authority of official policy-maker for the city.  Mealing also argues that Chief Hall was acting under color of state law when he advised Mealing that he was terminated, and that, consequently, liability is imputed to the City. Mealing also argues that there is a factual issue as to Chief Hall's final policy-making authority, or that since both participated in the illegal termination, the City should be liable.

Plaintiff's response is insufficient to withstand the City's summary judgment motion.  Plaintiff Mealing has failed to demonstrate that an official with "final policy-making authority" terminated Mealing and that the action was an act of official government policy.  The statutory authority granted to city mangers is subordinate to civil service rules and oversight.  RCW 35A.13.080 and 100.  The Civil Service Commission retained final policy making authority over termination and alleged violations of the City and Commission's anti-discrimination provisions.

Mealing also argues that he does not assert a claim sounding in tort and that the requirements of RCW 4.96.010 and 020 do not apply and Mealing was under no duty to give notice to the City of the nature of his claims at least 60 days before filing a lawsuit.

Mealing's argument on the claim filing issue lacks merit.  Washington requires strict compliance with the notice of claim statute.  *Medina v. Public Utility District No. 1 of Benton County*, 147 Wn.2d 303, 317-18 (2002).  It is undisputed that Mealing did not comply with the notice of claim statute before filing his lawsuit.  The Washington Supreme Court has specifically held that a discrimination action under RCW 49.60 (wrongful discharge) is a tort, and it also held that such causes of action are subject to the notice of claim statutes when brought against a governmental entity.  *Blair v. Washington State University,* 108 Wn.2d 55, 575-77 (1987) (state notice of claim statute applies to sex discrimination under RCW 49.60.).  Accordingly, Mealing's state law claims must be dismissed as a matter of law.

Finally, the Ridgefiled Police Department is not a legal entity under Washington law for

ORDER - 5

purposes of being sued. Mealing presented no argument on this issue. Pursuant to Fed. R. Civ. P. 17(b), the capacity of a police department to be sued must be determined by state law. RCW § 4.96.010 permits tort lawsuits to be brought against "local government entities," which are defined as "county, city, town, special district, municipal corporation as defined RCW § 39.50.010, quasi-municipal corporation or public hospital." RCW § 4.96.010(2). The Ridgefield Police Department does not fit this definition, thus the claims against it must be dismissed.

ACCORDINGLY, IT IS ORDERED: The Motion of the City of Ridgefield and the Ridgefield Police Department for Summary Judgment [Dkt. # 53] is GRANTED and Plaintiff's claims against these defendants are DISMISSED with prejudice.

DATED this 19th day of March, 2007.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 6